1    Christopher A. Minier (State Bar No. 190705)
    E-mail: cminier@ringstadlaw.com

2    RINGSTAD & SANDERS, LLP
    2030 Main Street, 12th Floor

3    Irvine, CA 92614
    Telephone: (949) 851-7450

4    Facsimile: (949) 851-6926

5    General Counsel for Steven M. Speier, Chapter 7
    Trustee

6

7             **UNITED STATES BANKRUPTCY COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

9

10    In re

11    FRANCIS GABRIEL, and MARILYNN
    GABRIEL,

12

13            Debtors.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re | CASE No. 6:09-19577 MJ |
| FRANCIS GABRIEL, and MARILYNN GABRIEL, | Chapter 7 Proceeding |
| Debtors. | **NOTICE OF MOTION AND MOTION BY CHAPTER 7 TRUSTEE FOR AN ORDER:** (1) **APPROVING COMPROMISE BETWEEN TRUSTEE AND DEBTORS; AND** (2) **AUTHORIZING TRUSTEE TO EMPLOY NETT & NETT, P.C., AS SPECIAL LITIGATION COUNSEL AND TO PAY A FLAT FEE TO SAME;** **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF STEVEN M. SPEIER AND AMY K. NETT** |
| | HEARING: Date: October 12, 2010 Time: 10:00 a.m. Place: Courtroom 301 3420 Twelfth Street Riverside, CA 92501 |

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1    **TO THE HONORABLE MEREDITH A. JURY, UNITED STATES BANKRUPTCY**

2    **JUDGE, DEBTORS AND THEIR COUNSEL OF RECORD, AND OTHER INTERESTED**

3    **PARTIES:**

4        **PLEASE TAK NOTICE** that on October 12, 2010, at 10:00 a.m., before the Honorable

5    Meredith A. Jury, United States Bankruptcy Judge, in Courtroom 301 of the United States

6    Bankruptcy Court, located at 3420 Twelfth Street, Riverside, California 92501, Steven M. Speier,

7    the duly appointed Chapter 7 Trustee (the "Trustee") for the above-referenced bankruptcy estate

8    of Francis Gabriel and Marilyn Gabriel (hereafter collectively "Debtors"), will, and hereby does,

9    move the Court for an Order:

10       (1)    Approving the compromise between the Trustee and the Debtors as

11   embodied in the Settlement Agreement and Conflict of Interest Waiver (the "Settlement"

12   or "Agreement") attached hereto as Exhibit "1;"

13       (2)    Authorizing the Trustee to take all actions and to execute all documents

14   necessary to effectuate the Settlement and its terms, including execution of the Agreement

15   itself; and

16       (3)    Approving the Trustee's employment of Nett & Nett, P.C., as his special

17   litigation counsel to represent him, in addition to this law firm's representation of the

18   Debtors, in the litigation currently pending in Riverside County Superior Court commonly

19   known as *Francis Gabriel, Marilyn Gabriel and Southern California FMG, Inc. v. Gilbert*

20   *Finley, Kellie Finley, Michael Hotvedt and FMG Construction & Restoration, Inc.*,

21   R.C.S.C. Case No. RIC510995 (hereafter the "State Court Action"), authorizing the

22   Trustee's payment of a flat fee of $25,000 to this law firm for its representation of the

23   trustee in this action through judgment, and authorizing the Trustee to pay this firm a

24   contingency fee of 20% or all gross amounts recovered from any post-judgment

25   enforcement of judgment efforts of this firm.

26       This Motion is made pursuant to Rules 2002, 2014 and 9019 of the Federal Rules of

27   Bankruptcy Procedure and is made on the ground that the proposed Settlement and employment

28   are in the best interests of the bankruptcy estate and its creditors.

Ringstad & Sanders
L.L.P.
2050 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1    The Motion is based upon the attached Memorandum of Points and Authorities, the

2    Declarations of Steven M. Speier (the "Speier Declaration") and Amy K. Nett (the "Nett

3    Declaration") and the documentary evidence attached thereto, the separate Notice of the Motion

4    served on all creditors and interested parties, all pleadings, papers and records on file with the

5    Court in this proceeding, and such other evidence, oral or documentary, as may be presented to

6    and considered by the Court, in connection with this Motion and the hearing hereon.

7         **IF YOU DO NOT OPPOSE THIS MOTION,** you need take no further action.

8         **IF YOU WISH TO OPPOSE THIS MOTION,** pursuant to Local Bankruptcy Rule

9    9013-1(f), you must do so not later than 14 days before the hearing by filing a written opposition

10   with the Clerk of the United States Bankruptcy Court (with a duplicate copy), located at 3420

11   Twelfth Street, Room 125, Riverside, California 92501, and serving the opposition on counsel for

12   the Trustee, whose name and address appear at the upper-left hand corner of the first page of this

13   document, and the Office of the United States Trustee, located at 3685 Main Street, Suite 300,

14   Riverside, California, 92501.

15        **PLEASE TAKE FURTHER NOTICE** that Pursuant to Local Bankruptcy Rule 9013-

16   1(f)(1), any opposition to the Motion must contain "[a] complete written statement of all reasons

17   in opposition thereto . . . declarations and copies of all photographs and documentary evidence

18   on which the responding party intends to rely, and any responding memorandum of points and

19   authorities."

20        Failure to timely file and serve such an opposition to the Motion may be deemed by the

21   Court to be consent to the relief requested in the Motion.

22   **SEE LOCAL BANKRUPTCY RULES 9013-1 AND 2014-1.**

23   ///

24   ///

25   ///

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

**WHEREFORE,** Trustee respectfully requests that the Court enter an Order:

1.      Approving the compromise between the Trustee and the Debtors as embodied in the Settlement Agreement and Conflict of Interest Waiver (the "Settlement" or "Agreement") attached hereto as Exhibit "1;"

2.      Authorizing the Trustee to take all actions and to execute all documents necessary to effectuate the Settlement and its terms, including execution of the Agreement itself;

3.      Approving the Trustee's employment of Nett & Nett, P.C., as his special litigation counsel to represent him, in addition to this law firm's representation of the Debtors, in the litigation currently pending in Riverside County Superior Court commonly known as *Francis Gabriel, Marilyn Gabriel and Southern California FMG, Inc. v. Gilbert Finley, Kellie Finley, Michael Hotvedt and FMG Construction & Restoration, Inc.*, R.C.S.C. Case No. RIC510995 (hereafter the "State Court Action"), authorizing the Trustee's payment of a flat fee of $25,000 to this law firm for its representation of the trustee in this action through judgment, and authorizing the Trustee to pay this firm a contingency fee of 20% or all gross amounts recovered from any post judgment enforcement of judgment efforts of this firm related to the State Court Action; and

4.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED:  September ___, 2010

By: _____
    Steven M. Speier,
    Chapter 7 Trustee

DATED: September ___, 2010

RINGSTAD & SANDERS, LLP

By: _____
    Christopher A. Minier,
    General Bankruptcy Counsel for
    Steven M. Speier, Chapter 7 Trustee

Ringstad & Sanders, L.L.P.
Steven, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    General Background.**

On May 7, 2009, Francis Gabriel and his wife, Marilynn Gabriel ("Debtors"), filed a voluntary petition under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Court").

Steven M. Speier is the duly appointed, qualified, and acting Chapter 7 trustee ("Trustee") of the Debtors' bankruptcy estate.

A claims bar date of September 18, 2009, was established in the Debtors' bankruptcy case, and a total of $246,058.00 of unsecured claims were timely filed against the estate.

**B.    The State Court Action.**

On their Statement of Financial Affairs filed by Debtor's in connection with their Bankruptcy Case, Debtors disclosed that they are the sole shareholders of an entity known as Southern California FMG, Inc., a California corporation (hereafter "SCFMG"), which is engaged in the restoration, renovation and repair of residential and commercial properties that have suffered water or fire damage. SCFMG is an entity that was started and financed by the Debtors. The Debtor's contend that they financed the startup and operation of this business with over $127,000 of their personal funds. Francis Gabriel was the President and Chief Executive Officer of SCFMG, and Marilyn Gabriel was the Vice President and Secretary of the company. Francis Gabriel's stepson, Gilbert Finley, acted as the operations manager for SCFMG, and managed the day-to-day operations of the company. Gilbert Finley was a member of SCFMG's board of directors, but he was not an officer or shareholder of the company. Gilbert Finley was authorized to use one or more American Express account(s) / card(s) held by SCFMG. The repayment of amounts owed on such revolving credit account(s) was personally guaranteed by the Debtors. Gilbert Finley was only authorized to use SCFMG's credit account(s) for legitimate business purposes.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1       The Debtors are currently embroiled in litigation with Gilbert Finley and others regarding

2  SCFMG and its assets.  This litigation is commonly known as *Francis Gabriel, Marilyn Gabriel*

3  *and Southern California FMG, Inc. v. Gilbert Finley, Kellie Finley, Michael Hotvedt and FMG*

4  *Construction & Restoration, Inc.,* Riverside County Superior Court Case No. RIC510995 (the

5  "State Court Action").  In the State Court Action, the Debtors' Complaint alleges causes of action

6  for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of

7  fiduciary duty; (4) fraud & deceit; (5) constructive fraud; (6) conversion; (7) conspiracy; and (8)

8  declaratory relief.  Attached hereto as Exhibit "2" is a true and correct copy of the Debtors'

9  Second Amended Complaint in the State Court action.

10       In summary, in the State Court Action the Debtors contend, among other things, that: (i)

11  the defendants therein converted hundreds of thousands of dollars of the property of SCFMG to

12  their own use; (ii) Gilbert Finley, his wife, and others wrongfully charged up to approximately

13  $90,000 of personal expenses on SCFMG's American Express account(s); (iii) the defendants

14  inexcusably failed to file tax returns or pay taxes for SCFMG, resulting in significant personal

15  liability for the Debtors; (iv) defendants Gilbert Finley and his wife wrongfully breached an

16  agreement to pay rent to the Debtors on account of defendants' lease of real property from the

17  Debtors; and (v) defendants Gilbert Finley and his wife wrongfully breached an agreement to

18  make payments on a $100,000 loan obtained by the Debtors for the benefit of Gilbert Finley and

19  his spouse and at Gilbert Finley's request, which loan was secured by a deed of trust against real

20  property owned by the Debtors.  In total, Debtors are seeking to recover in excess of $500,000

21  against Gilbert Finley and the other above-described defendants in the State Court Action.

22       Debtors disclosed the State Court Action on their "Schedule B – Personal Property" filed

23  in connection with their bankruptcy case, and ascribed an "unknown" value to this asset.  Debtors

24  did not claim any exemption in the State Court Action on their bankruptcy schedules.

25       Trustee asserts that the Debtors' State Court Action, the claims alleged therein, and all

26  proceeds to be derived therefrom, are property of the Debtors' bankruptcy estate because the

27  causes of action plead therein all arose prior to the filing of the Debtors' bankruptcy case.  The

28  Debtors dispute that the Trustee and bankruptcy estate are the true owners of the claims asserted

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    in the State Court Action. The Settlement Agreement resolves this dispute if approved by the

2    Court.

3        Debtors are represented in the State Court Action by the Temecula California law firm of

4    Nett & Nett, P.C. (hereafter "Nett & Nett"). When Debtors commenced their Chapter 7

5    Bankruptcy Case, they were represented by attorney Edward A. Weiss in the bankruptcy. Once

6    the Trustee filed his Objection and Turnover Motion (described in detail below), Debtors

7    substituted Nett & Nett as their counsel in the Bankruptcy Case in place of Mr. Weiss. Debtors

8    filed their Substitution of Attorney with the Bankruptcy Court on March 1, 2010.

9        **C.    The Debtors' Financial Accounts / Assets, and the Trustee's Objection to the**

10           **Debtors' Exemption Claims.**

11       Debtors listed as an asset on their bankruptcy schedules a "AAA Life Insurance Company

12   Annuity...Policy" with a current value of $56,431.96 (hereafter the "AAA Annuity"). On their

13   bankruptcy schedules, Debtors claimed that the entire $56,431.96 value of the annuity was

14   exempt pursuant to California Code of Civil Procedure ("Cal. Code Civ. Proc.") § 404.100(c).

15       Debtors also listed as an asset on their bankruptcy schedules a Symetra Financial Life

16   Insurance Policy (the "Symerta Policy"), and claimed that this policy had a current value of

17   $24,281.32. On their bankruptcy schedules, Debtors claimed that $21,550.00 of the total cash

18   surrender value of the Symetra Policy was exempt pursuant to Cal. Code Civ. Proc. § 704.100(b).

19       Lastly, Debtors listed two accounts with American Funds Investments on their bankruptcy

20   schedules B (account #s 64150523 and 58019483) (hereafter collectively the "American Funds

21   Accounts") in the combined amount of $20,687.72. Debtors did not claim any exemption in the

22   American Funds Accounts.

23       On December 11, 2009, the Trustee timely filed his Notice of: (1) Objection and

24   Objection to Debtors' Claims of Exemption in a (A) AAA Life Insurance Company Annuity; and

25   (B) Symetra Life Insurance Policy; (2) Motion and Motion for Turnover of Property of the Estate

26   Pursuant to 11 U.S.C. § 542 (hereafter the "Objection and Turnover Motion"). Based on the

27   ongoing nature of the settlement discussions that have been occurring between the Debtors and

28   the Trustee, the hearing on the Trustee's Objection and Turnover Motion has been continued

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1    several times.  A continued hearing is presently scheduled to be held on the Trustee's Objection

2    and Turnover Motion on October 26, 2010, at 10:00 a.m.

3    In his Objection and Turnover Motion, the Trustee argued that the AAA Annuity was not

4    exempt in any amount under California law and must be turned over to the Trustee because it did

5    not qualify as "life insurance" and, instead, was a merely a single-premium annuity contract that

6    happened to have been issued by a company that also sells life insurance policies.  The Trustee

7    further argued in his Objection and Turnover Motion that the Symetra Policy could only be

8    exempted by the Debtors in the maximum combined amount of $19,400.00 ($9,700 x 2 =

9    $19,400) pursuant to Cal. Code Civ. Proc. § 704.100(b).  Therefore, the Trustee argued that the

10   cash surrender value of the Symetra Policy in excess of $19,400 was nonexempt and must be

11   liquidated and turned over to him.

12   In addition to the foregoing Objection and Turnover Motion, the Trustee intended to file a

13   motion for turnover of the funds held in the Debtors' above-described American Funds Accounts.

14   If the settlement of the Parties as embodied in this Agreement is approved by the Court, it will

15   moot the Trustees' Objection and Turnover Motion as well as any need for the Trustee to file a

16   motion for turnover of the American Funds Accounts.  The Trustee believes that the maximum

17   benefit that could be achieved for the bankruptcy estate through litigation of the above-described

18   Objection and Turnover Motion, and the anticipated motion for turnover of the American Funds

19   Accounts is $82,001.00 ($56,431.93 AAA Annuity + $4,881.32 non-exempt portion of Symetra

20   Life Insurance Policy + $20,687.72 American Funds Accounts = $82,001.00).[1]

21   The Debtors dispute the contentions and legal conclusions set forth in the Trustee's

22   Objection and Turnover Motion.  Debtors further dispute the Trustee's contention that he, and the

23   bankruptcy estate, are entitled to the funds in the above-described American Funds Accounts as

24   well.  If approved by the Court, the Settlement Agreement will resolve the dispute between the

25   Trustee and the Debtors regarding the AAA Annuity, the Symetra Policy and the American Funds

26   Accounts.

27

28   _____
[1] The value of there assets are those ascribed to them by the Debtors in their bankruptcy schedules
and statements.

439802.2
- 8 -

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  In an effort to avoid the need for litigation between the Parties in order to resolve the

2  foregoing disputes, and in an effort to avoid the substantial cost to both the bankruptcy estate and

3  the Debtors that would be occasioned by such litigation, the Parties have entered into the

4  Settlement Agreement, which Agreement shall take effect if, and only if, the Court approves the

5  Settlement.  In addition to resolving the above-described disputes, the Settlement also provides a

6  means for the continued prosecution of the State Court Action for the joint benefit of the Debtors

7  and the bankruptcy estate, and provides for the payment of a $25,000 flat fee to Nett & Nett, P.C.,

8  for this firm's representation of the Trustee and the Debtors in this action through judgment.

9  ## II.

10  ## THE TERMS OF THE PROPOSED SETTLEMENT

11  The Proposed Settlement.  A copy of the Settlement Agreement is attached hereto as

12  Exhibit "1," and the terms thereof are incorporated herein by this reference. The material terms of

13  the proposed Settlement are as follows[2]:

14  A.    The effective date (the "Effective Date") of the Settlement Agreement is deemed

15  to be the date upon which the Court in the Debtors' bankruptcy case enters an Order approving

16  the Agreement.

17  B.    Debtors shall liquidate the above-described American Funds Accounts and the

18  AAA Annuity and, no later than ten (10) calendar days following entry of an Order of the Court

19  approving this Agreement, and Debtors shall deliver to the Trustee a total of $74,000.00 (the

20  "Settlement Amount") from the liquidation of said assets to the Trustee.  The entirety of the

21  Settlement Amount shall be property of the Debtors' bankruptcy estate and shall be non-exempt.

22  In the event that Debtors tender the Settlement Amount to the Trustee prior to the Court granting

23  approval of the Settlement, and if the Agreement is ultimately not approved by the Court, the

24  Trustee shall return the Settlement Amount to the Debtors forthwith.

25  ///

26

27  [2]    The parties to the proposed Settlement agree to be bound by the terms of the formal
Settlement Agreement.  As such, in the event there is any inconsistency between the following
28  summary and the Settlement Agreement, the terms of the Settlement Agreement are intended to
be and shall be controlling.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

C.    In consideration for the Debtors delivery of the Settlement Amount to the Trustee, and subject to the approval of the Court, the Trustee and bankruptcy estate shall relinquish and abandon any further interest which they might otherwise have in the American Funds Accounts, the AAA Annuity and the Symerta Policy, and any other proceeds contained therein or derived therefrom.

D.    Debtors shall bear, and shall be solely responsible for paying, any and all tax consequences arising from the American Funds Accounts, the AAA Annuity and/or the Symerta Policy, and/or arising from the liquidation of such assets.

E.    The Trustee / bankruptcy estate shall have a 50% ownership interest in the State Court Action, the causes of action asserted therein and all proceeds derived therefrom. Similarly, the Debtors shall also have a 50% ownership interest in the State Court Action, the causes of action asserted therein and all proceeds derived therefrom. On a day-to-day basis, the Debtors shall be entitled to conduct and direct the prosecution of this litigation. However, any dismissal, settlement or other disposition of this action whether in whole or in part, other than by way of a final judgment, shall be in the sole and absolute discretion of the Trustee.

F.    As part of his motion for approval of the Settlement Agreement by the Court, the Trustee shall also seek the authority of the Court to employ and pay the Nett & Nett firm to represent the Trustee (jointly with its representation of the Debtors) as his special litigation counsel in the State Court Action. The Trustee shall seek the authority of the Court to employ Nett & Nett to represent the bankruptcy estate (along with its representation of the Debtors) in the State Court Action through judgment for a flat fee of $25,000.00 to be paid by the estate without further notice or Order of the Court from the above-described $74,000.00 Settlement Amount. Subject to Court approval, the foregoing $25,000.00 flat fee to Nett & Nett shall be paid by the Trustee no later than 15 days following the date on which an Order of the Court approving such payment and the Trustee's employment of Nett & Nett becomes final and non-appealable. The Trustee shall further seek authority to employ Nett & Nett at a contingency fee of 20% of all gross amounts recovered from any post-judgment enforcement efforts of this firm, with such amounts to be paid directly from the gross amounts thereby collected without further notice or

Ringstad & Sanders
L.L.P.
2020 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1    Order of the Court.

2          G.     On or about August 7, 2009, Gilbert Finley and FMG Construction & Restoration

3    filed a complaint with the Court for a determination that certain alleged debts owed by the

4    Debtors to said parties are nondischargeable pursuant to 11 U.S.C. § 523.  This adversary

5    proceeding remains pending and has been assigned adversary proceeding case number 06:09-

6    01378 MJ (the "Adversary Proceeding").  The Debtors May attempt to have the Adversary

7    Proceeding either dismissed or removed to the state court.  As part of the Settlement, the Trustee

8    will agree not to oppose such dismissal or removal efforts of the Debtors with respect to the

9    Adversary Proceeding.

10          H.     Included as part of the Settlement Agreement is a Written Conflict of Interest

11    Waiver by the Debtors and Trustee.  By way of this Conflict of Interest Waiver, each of the

12    parties to the Agreement acknowledges that pursuant to the Agreement the Nett & Nett law firm:

13    (i) is counsel of record to the Debtors in their Chapter 7 Bankruptcy Case; (ii) shall represent both

14    the Trustee and the Debtors in the State Court Action; and (iii) shall represent the Debtors in the

15    Adversary Proceeding.  In the Agreement, the Debtors and Trustee each acknowledge that Nett &

16    Nett's concurrent representation of the Trustee and the Debtors will result in actual and/or

17    potential conflicts of interests.  However, the Agreement recites that notwithstanding such actual

18    and/or potential conflicts of interest, the Trustee and the Debtors desire Nett & Nett to

19    concurrently represent them as described above and, by the execution of the Agreement, the

20    Trustee, Francis Gabriel and Marilyn Gabriel each thereby waive in writing such actual and/or

21    potential conflicts of interest and expressly agree to such concurrent representation of the parties

22    by Nett & Nett notwithstanding such actual and/or potential conflicts of interest.

23    ///

24    ///

25    ///

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

# III.

## ARGUMENT AND APPLICABLE LEGAL AUTHORITY

**A.    The Applicable Legal Standards for Approval of a Compromise.**

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("F.R.B.P.") provides:

> (a)    On motion by the trustee and after notice and a hearing, the
> court may approve a compromise or settlement.  Notice shall be given
> to creditors, the United States trustee, the debtor and indenture trustees
> as provided in Rule 2002 and to any other entity as the court may
> direct.

Accordingly, upon appropriate notice, the Court may approve a compromise or settlement. In the instant case, this entire Motion has been served on the Debtors, the Debtors' counsel, all parties requesting special notice and the Office of the United States Trustee.  In addition, all creditors and other interested parties have been served with a detailed Notice of this Motion which advises such parties of the above-described facts involved in this case, the relief being sought by the Trustee in the Motion, informs such parties of how they may obtain a copy of the full and complete Motion together with its supporting declarations and exhibits, and describes the manner in which parties may oppose the Motion.

The Ninth Circuit has stated that, "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Caine (In re A&C Properties)*, 784 F.2d. 1377, 1380-81 (9th Cir. 1986) *cert. denied sub nom*, *Martin v. Robinson*, 479 U.S. 854 (1986).  The Bankruptcy Court has great latitude in approving a compromise so long as it finds that the compromise is fair and equitable. *Id.* at 1382; *see also*, *Woodson v. Fireman's Fund Insurance Company (In re Woodson)*, 839 F. 2d. 610, 620 (9th Cir. 1988) and *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997).

The Ninth Circuit Court of Appeals and the Bankruptcy Appellate Panel for the Ninth Circuit have consistently held that a Bankruptcy Court must consider four factors in determining whether to approve a compromise:

439802.2

1.      The probability of success in the litigation;

2.      The difficulties, if any, to be encountered in the matter of collection;

3.      The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

4.      The paramount interest of the creditors and a proper deference to their reasonable views.

*See, In re A&C Properties, supra*, at 1381; *In re Woodson, supra* at 620; *In re Schmitt, supra*, at 421.

**B.      The Applicable Legal Standards for the Trustee's Employment of Special Counsel.**

Section 327(a) of the United States Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the trustee in carrying out the trustee's duties under this title.

**C.      The Court Should Approve the Settlement Between the Trustee and the Debtors, and Should Also Authorize the Proposed Employment.**

**1.      Probability of success in the litigation.**

In this case, the Trustee has thoroughly evaluated the estate's ability to successfully object to the Debtors' claims of exemption in the AAA Annuity and the Symetra Policy, and to obtain turnover of the funds in the American Funds, the AAA Annuity and the Symetra Policy accounts, through litigation. Although the Trustee believes that he would be successful in such litigation, he also believes that the maximum benefit that could be achieved for the bankruptcy estate through such litigation is $82,001.00, and that obtaining such benefit through litigation would entail substantial costs, risks and delays to the bankruptcy estate. By comparison, under the Settlement the trustee will recover a total of $74,000 for the benefit of the estate, which equates to approximately 90% of the maximum amount that the Trustee believes he could obtain

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    through litigation, while avoiding the costs, risks and delays that would be inherent in litigation.

2        The Settlement also has the additional benefit of providing a mechanism for the continued

3    prosecution of the State Court Action for a flat fee and, from what the Trustee has been able to

4    ascertain about this action, he believes that the continued prosecution of the action will

5    ultimately result in a net benefit to the bankruptcy estate and its creditors.  In the absence of the

6    Settlement, and in the absence of the agreement of Nett & Nett to prosecute the State Court

7    Action to judgment for a flat fee of $25,000.00, the Trustee believes that it is unlikely that the

8    bankruptcy estate would have sufficient funds to hire counsel on an hourly fee basis to prosecute

9    this litigation.  The Trustee also believes that it is unlikely that he would be able to hire counsel

10    to prosecute the State Court Action on a purely contingency fee basis.

11        Moreover, because under the Settlement the Trustee and bankruptcy estate, on the one

12    hand, and the Debtors, on the other hand, will each own a 50% interest in the State Court Action

13    and any proceeds derived therefrom, it gives the Debtors incentive to cooperate in the ongoing

14    prosecution of this litigation.  In the absence of the Settlement, the Trustee believes that the

15    Bankruptcy Court would find that the Trustee was the exclusive owner of the State Court Action.

16    However, such a finding by the Bankruptcy Court would leave the Debtors with no incentive to

17    cooperate in the continued prosecution of the State Court Action, and the Trustee believes that

18    without the Debtors' cooperation, the State Court Action could not be prosecuted to a successful

19    conclusion.

20        In exchange for the benefits that will be achieved by the bankruptcy estate under the

21    Settlement, the estate will forego the right to attempt to collect an additional total of $8,001.00

22    from the AAA Annuity, the Symetra Policy and the American Funds Accounts.  The estate will

23    also forego its ability to claim a 100% ownership interest in the State Court Action and, instead,

24    will share the rights to this litigation with the Debtors on a 50% - 50% basis.

25        In light of all of the foregoing, the Trustee believes that the total net benefits to the estate

26    that will be achieved under the Settlement Agreement are greater than any net benefits that the

27    estate could or would achieve in the absence of the Settlement.  In light of this, the Trustee

28    believes that the Settlement should be approved by the Court.

Ringstad & Sanders
L.L.P.
2010 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1        **2.    The difficulties, if any, to be encountered in the matter of collection.**

2        The Settlement also allows the Trustee to avoid the uncertainty, costs and delay that

3    would likely result form an attempt to collect any amounts that the Court rules the bankruptcy

4    estate is entitled to receive from the AAA Annuity, the Symetra Policy and the American Funds

5    Accounts.  Although the Trustee does not believe that any collection efforts that might be

6    necessary in the absence of the Settlement would be extremely difficult or costly, such collection

7    would, inevitably, have some associated costs, uncertainly and delay.

8        As described in detail above, the Settlement also provides a means for the continued

9    prosecution of the State Court Action and the enforcement of any judgment that might be

10    achieved from such action.  In the absence of the Settlement, the Trustee believes that the

11    continued prosecution of this action and the enforcement of any resulting judgment would likely

12    not be feasible.

13        In light of the foregoing facts and circumstances, the Trustee believes that this factor also

14    militates in favor of the Settlement and Court approval thereof.

15        **3.    The complexity of the litigation involved and the Expense,**

16        **Inconvenience and Delay Necessarily Attending It.**

17        The Trustee believes that the currently pending contested matter between him and the

18    Debtors regarding the AAA Annuity, Symetra Policy and American Funds Accounts is not

19    particularly complex.  Moreover, because the Trustee has already prepared and filed his Objection

20    and Turnover Motion, continued litigation regarding these assets would probably not cause any

21    significant delay.

22        However, even if the Trustee were successful in getting the Court to rule that the

23    bankruptcy estate is entitled some or all of the assets in the AAA Annuity, Symetra Policy and/or

24    American Funds Accounts, it is possible that the trustee would encounter significant difficulty in

25    obtaining the turnover of some or all of the funds in these accounts from the account custodians.

26    The Settlement allows the Trustee to avoid the uncertainty, cost, inconvenience and delay that

27    would likely result form an attempt to obtain the turnover of any funds in these accounts that the

28    Court rules the bankruptcy estate is entitled to receive.  Although the Trustee does not believe that

439802.2

Kingstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    any efforts to obtain the turnover of funds in these accounts that might be necessary in the

2    absence of the Settlement would be extremely difficult or costly, such collection would,

3    inevitably, have some associated costs, uncertainly, delay and inconvenience.  In light of the

4    foregoing facts and circumstances, the Trustee believes that this factor also militates in favor of

5    the Settlement and Court approval thereof.

       **4.**       **The paramount interest of the creditors and the proper deference to**

7           **their reasonable views.**

8          By the proposed Settlement, the Debtors are prepared to tender to the estate the

9    $74,000.00 Settlement Amount.  As set forth above and in the attached Speier Declaration, the

10    Trustee believes that the proposed Settlement is in the best interest of creditors because it

11    eliminates all additional costs, risks and delays associated with litigating the parties' dispute(s),

12    and it also eliminates all costs, risks and delays that would be associated with his need to obtain

13    the turnover of funds in the AAA Annuity, Symetra Account and American Funds Accounts from

14    the custodians of these accounts.

15          Further, the Settlement also provides a means for the continued prosecution of the State

16    Court Action and the enforcement of any judgment that might be achieved from such action.  In

17    the absence of the Settlement, the Trustee believes that the continued prosecution of this action

18    and the enforcement of any resulting judgment would likely not be feasible.  The Trustee also

19    believes that it is substantially likely that pursuing the State Court Action will ultimately result in

20    a significant net benefit to the estate and its creditors above and beyond the cost of the litigation.

21          In light of all of the foregoing facts and circumstances, the Trustee does not believe that

22    he would obtain a more favorable net result for the bankruptcy estate and its creditors through

23    continued litigation with the Debtors than will be achieved through Court approval and

24    performance of the Settlement Agreement.  Consequently, the Trustee believes that the

25    paramount interests of creditors weigh in favor of the Settlement.  Accordingly, the Trustee

26    submits that approval of the Settlement is in the best interest of creditors and the estate.

27    ///

28

439802.2

**5.    The Court Should Approve the Trustee's Employment of Special Litigation Counsel.**

As described above, the Debtors are represented in the State Court Action by the Nett & Nett law firm. Consequently, Nett & Nett is already very familiar with this litigation, and the facts, documents and issues involved in the litigation. Among other things, Nett & Nett specializes in civil / business litigation of the type involved in the State Court Action and is imminently qualified to represent the Trustee in this action. Attached hereto as Exhibit "3" is a true and correct copy of Nett & Nett's firm resume, which includes biographical information about each of the firm's professionals as well as a listing of the hourly rates generally charged by the firm.

Pursuant to the terms of the Settlement Agreement, the Trustee / bankruptcy estate shall obtain a 50% ownership interest in the State Court Action and all proceeds derived from this action. Therefore, pursuant to this Motion, the Trustee hereby seeks authority of the Court to employ and pay the Nett & Nett firm to represent the Trustee (jointly with its representation of the Debtors) as his special litigation counsel in the State Court Action. Nett & Nett has agreed to jointly represent the Trustee and Debtors as plaintiffs in the State Court Action through judgment for a flat fee of $25,000.00, which the Trustee proposes to pay from the $74,000.00 Settlement Amount to be received by the estate from the Debtors pursuant to the terms of the Settlement.

The Trustee further hereby seeks the authority of the Court to employ Nett & Nett (to the extent needed) for the purpose of enforcing any judgment that the Debtors and Trustee might obtain against the defendants in the State Court Action. Nett & Nett has agreed to undertake any necessary enforcement of judgment actions for a contingency fee of 20% of all gross amounts recovered through the efforts of this firm, with such amounts to be paid directly from the gross amounts thereby collected without further notice or Order of the Court.

Nett & Nett has not received, and will not receive, a prepetition or postpetition retainer. Instead, the firm will be compensated exclusively from the flat fee and contingency fee described in the immediately preceding paragraph for all professional services rendered and costs incurred in the representation.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1    As is set forth in the attached Nett Declaration, Nett & Nett has not agreed to share with

2 any person or entity any compensation which it may receive in this representation, except among

3 principals and associates of the firm.

4    Nett & Nett is not a prepetition creditor of the Debtors nor a creditor of the bankruptcy

5 estate, and neither the firm nor any of the attorneys comprising or employed by it have any

6 connection with the Debtors' creditors, or any other party in interest, or their respective attorneys

7 or accountants, the United States Trustee, or any person employed in the Office of the United

8 States Trustee. [Rule 2014 Federal Rules of Bankruptcy Procedure]. Nett & Nett does, however,

9 currently represent the Debtors in the State Court Action and also recently became counsel of

10 record for the Debtors in the bankruptcy case for the purpose of negotiating the Settlement

11 Agreement between the Debtors and Trustee. However, it is not anticipated that Nett & Nett will

12 be required to render any future services to the Debtors in connection with the bankruptcy case.

13 As part of the Settlement Agreement, the Debtors and Trustee each executed appropriate written

14 Conflict of Interest Waivers thereby waiving any actual or potential conflict of interest that might

15 be occasioned by Nett & Nett's representation of the Trustee and Debtors in the State Court

16 Action. [See Exhibit "1," ¶ 8]. Other than the foregoing, Nett & Nett has no interest adverse to

17 either the Debtors, Trustee, any creditor, or to this estate and is "disinterested" as that term is

18 defined in 11 U.S.C. § 101(14), and does not have any interest, nor represent any interest, adverse

19 to the Debtors or the estate. [11 U.S.C. § 327(a)].

20    The Trustee believes that the continued prosecution of the action will ultimately result in a

21 net benefit to the bankruptcy estate and its creditors, and that continued prosecution of the State

22 Court Action is in the best interest of the bankruptcy estate and its creditors. Nett & Nett is the

23 only legal counsel known to the Trustee that is willing to prosecute the State Court Action to

24 judgment for a flat fee of $25,000.00, and the Trustee believes that it is unlikely that the

25 bankruptcy estate would have sufficient funds to hire counsel on an hourly fee basis to prosecute

26 this litigation. The Trustee further believes that it is unlikely that he would be able to hire counsel

27 to prosecute the State Court Action on a purely contingency fee basis. Thus, the Trustee believes

28 that absent obtaining Court approval of the employment of, and payment of fees to, Nett & Nett

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

- 18 -

1    as described herein, prosecution of the State Court Action will likely not be possible.

2    Accordingly, the Trustee believes that it is in the interest of all interested parties for the Court to

3    approve the proposed employment on the terms set forth herein and in the attached Settlement

4    Agreement.

5        **WHEREFORE,** Trustee respectfully requests that the Court enter an Order:

6        1.    Approving the compromise between the Trustee and the Debtors as embodied in

7    the Settlement Agreement and Conflict of Interest Waiver attached hereto as Exhibit "1;"

8        2.    Authorizing the Trustee to take all actions and to execute all documents necessary

9    to effectuate the Settlement and its terms, including execution of the Agreement itself;

10        3.    Approving the Trustee's employment of Nett & Nett, P.C., as his special litigation

11    counsel to represent him, in addition to this law firm's representation of the Debtors, in the

12    currently pending State Court Action, authorizing the Trustee's payment of a flat fee of $25,000

13    to this law firm for its representation of the trustee in this action through judgment, and

14    authorizing the Trustee to pay this firm a contingency fee of 20% or all gross amounts recovered

15    from any post-judgment enforcement of judgment efforts of this firm; and

16        4.    For such other and further relief as the Court deems just and proper.

17

18                              Respectfully submitted,

19    DATED: September __9__, 2010

20

21    By: _____

22                              Steven M. Speier,
                               Chapter 7 Trustee

23

24    DATED: September __14__, 2010        RINGSTAD & SANDERS, LLP

25

26    By: _____

27                              Christopher A. Minier,
                               General Bankruptcy Counsel for

28                              Steven M. Speier, Chapter 7 Trustee

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

## DECLARATION OF STEVEN M. SPEIER

I, Steven M. Speier, declare:

1.      I have personal knowledge of the facts set forth below, and if called upon as a witness, I could and would competently testify thereto. I am the duly appointed Chapter 7 trustee for the bankruptcy estate of *In re Gabriel*, U.S.B.C. Case No. 6:09-19577 MJ (the "Bankruptcy Case"). On May 7, 2009, Francis Gabriel and Marilynn Gabriel (hereafter collectively "Debtors") commenced their Bankruptcy Case by the filing of a voluntary Petition under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") with the Bankruptcy Court for the Central District of California, Riverside Division (the "Court").

2.      A claims bar date of September 18, 2009, was established in the Debtors' bankruptcy case, and a total of $246,058.00 of unsecured claims were timely filed against the estate.

3.      On their Statement of Financial Affairs filed by Debtor's in connection with their Bankruptcy Case, Debtors disclosed that they are the sole shareholders of an entity known as Southern California FMG, Inc., a California corporation (hereafter "SCFMG"), which is engaged in the restoration, renovation and repair of residential and commercial properties that have suffered water or fire damage. The Debtors are currently embroiled in litigation with Gilbert Finley and others regarding SCFMG and its assets. Attached hereto as Exhibit "2" is a true and correct copy of the Debtors' Second Amended Complaint in the State Court action. In total, Debtors are seeking to recover in excess of $500,000 against Gilbert Finley and the other above-described defendants in the State Court Action.

4.      Debtors disclosed the State Court Action on their "Schedule B – Personal Property" filed in connection with their bankruptcy case, and ascribed an "unknown" value to this asset. Debtors did not claim any exemption in the State Court Action on their bankruptcy schedules.

5.      I contend that the Debtors' State Court Action, the claims alleged therein, and all proceeds to be derived therefrom, are property of the Debtors' bankruptcy estate because the causes of action plead therein all arose prior to the filing of the Debtors' bankruptcy case.

6. Debtors are represented in the State Court Action by the Temecula California law firm of Nett & Nett, P.C. (hereafter "Nett & Nett"). When Debtors commenced their Chapter 7 Bankruptcy Case, they were represented by attorney Edward A. Weiss in the bankruptcy. Once the Trustee filed his Objection and Turnover Motion (described below), Debtors substituted Nett & Nett as their counsel in the Bankruptcy Case in place of Mr. Weiss. Debtors filed their Substitution of Attorney with the Bankruptcy Court on March 1, 2010.

7. Debtors listed as an asset on their bankruptcy schedules a "AAA Life Insurance Company Annuity…Policy" with a current value of $56,431.96 (hereafter the "AAA Annuity"). On their bankruptcy schedules, Debtors claimed that the entire $56,431.96 value of the annuity was exempt pursuant to California Code of Civil Procedure ("Cal. Code Civ. Proc.") § 404.100(c).

8. Debtors also listed as an asset on their bankruptcy schedules a Symetra Financial Life Insurance Policy (the "Symerta Policy"), and claimed that this policy had a current value of $24,281.32. On their bankruptcy schedules, Debtors claimed that $21,550.00 of the total cash surrender value of the Symetra Policy was exempt pursuant to Cal. Code Civ. Proc. § 704.100(b).

9. Lastly, Debtors listed two accounts with American Funds Investments on their bankruptcy schedules B (account #s 64150523 and 58019483) (hereafter collectively the "American Funds Accounts") in the combined amount of $20,687.72. Debtors did not claim any exemption in the American Funds Accounts.

10. On December 11, 2009, I timely filed my Notice of: (1) Objection and Objection to Debtors' Claims of Exemption in a (A) AAA Life Insurance Company Annuity; and (B) Symetra Life Insurance Policy; (2) Motion and Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542 (hereafter the "Objection and Turnover Motion"). Based on the ongoing nature of the settlement discussions that have been occurring between the Debtors and me, the hearing on my Objection and Turnover Motion has been continued several times. A continued hearing is presently scheduled to be held on the Objection and Turnover Motion on October 26, 2010, at 10:00 a.m.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

11.   In my Objection and Turnover Motion, I have argued that the AAA Annuity is not exempt in any amount under California law and must be turned over to me because it does not qualify as "life insurance" and, instead, is merely a single-premium annuity contract that happens to have been issued by a company that also sells life insurance policies. I have also argued in my Objection and Turnover Motion that the Symetra Policy can only be exempted by the Debtors in the maximum combined amount of $19,400.00 ($9,700 x 2 = $19,400) pursuant to Cal. Code Civ. Proc. § 704.100(b). Therefore, I have argued that the cash surrender value of the Symetra Policy in excess of $19,400 is nonexempt and must be liquidated and turned over to me.

12.   In addition to the foregoing Objection and Turnover Motion, I intended to file a motion for turnover of the funds held in the Debtors' above-described American Funds Accounts. If the settlement of the parties as embodied in the Settlement Agreement and Conflict of Interest Waiver (the "Settlement Agreement" or "Agreement") is approved by the Court, it will moot my Objection and Turnover Motion as well as any need for me to file a motion for turnover of the American Funds Accounts. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "1."

13.   I believe that the maximum benefit that could be achieved for the bankruptcy estate through litigation of the above-described Objection and Turnover Motion, and the anticipated motion for turnover of the American Funds Accounts is $82,001.00 ($56,431.93 AAA Annuity + $4,881.32 non-exempt portion of Symetra Life Insurance Policy + $20,687.72 American Funds Accounts = $82,001.00).[3] Under the terms of the Settlement Agreement, the Debtors are required to liquidate the above-described American Funds Accounts and the AAA Annuity and, no later than ten (10) calendar days following entry of an Order of the Court approving the Agreement, and Debtors are required to deliver to me a total of $74,000.00 (the "Settlement Amount") from the liquidation of these assets.

14.   I have evaluated the estate's ability to successfully object to the Debtors' claims of exemption in the AAA Annuity and the Symetra Policy, and to obtain turnover of the funds in the American Funds, the AAA Annuity and the Symetra Policy accounts, through litigation.

[3] The value of there assets are those ascribed to them by the Debtors in their bankruptcy schedules and statements.

1    Although I believe that I would be successful in such litigation, I also believe that the maximum

2    benefit that could be achieved for the bankruptcy estate through such litigation is $82,001.00, and

3    that obtaining such benefit through litigation would entail substantial costs, risks and delays to the

4    bankruptcy estate. By comparison, under the Settlement the estate will recover a total of

5    $74,000.00, which equates to approximately 90% of the maximum amount that I believe I could

6    obtain through litigation, while avoiding the costs, risks and delays that would be inherent in

7    litigation.

8         15.    The Settlement also has the additional benefit of providing a mechanism for the

9    continued prosecution of the State Court Action for a flat fee and, from what I have been able to

10    ascertain about this action, I believe that the continued prosecution of the action will ultimately

11    result in a net benefit to the bankruptcy estate and its creditors. In the absence of the Settlement,

12    and in the absence of the agreement of Nett & Nett to prosecute the State Court Action to

13    judgment for a flat fee of $25,000.00, I believe that it is unlikely that the bankruptcy estate

14    would have sufficient funds to hire counsel on an hourly fee basis to prosecute this litigation. I

15    also believe that it is unlikely that I would be able to hire counsel to prosecute the State Court

16    Action on a purely contingency fee basis. Moreover, because under the Settlement the

17    bankruptcy estate, on the one hand, and the Debtors, on the other hand, will each own a 50%

18    interest in the State Court Action and any proceeds derived therefrom, it gives the Debtors

19    incentive to cooperate in the ongoing prosecution of this litigation. In the absence of the

20    Settlement, I believe that the Bankruptcy Court would find that the bankruptcy estate was the

21    exclusive owner of the State Court Action. However, such a finding by the Bankruptcy Court

22    would leave the Debtors with no incentive to cooperate in the continued prosecution of the State

23    Court Action, and I believe that without the Debtors' cooperation, the State Court Action could

24    not be prosecuted to a successful conclusion.

25         16.    I believe that the total net benefits to the estate that will be achieved under the

26    Settlement Agreement are greater than any net benefits that the estate could or would achieve in

27    the absence of the Settlement. In light of this, I believe that the Settlement should be approved by

28    the Court.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

17.    The Settlement also allows the estate to avoid the uncertainty, costs and delay that would likely result from an attempt to collect any amounts that the Court rules the bankruptcy estate is entitled to receive from the AAA Annuity, the Symetra Policy and the American Funds Accounts.  Although I do not believe that any collection efforts that might be necessary in the absence of the Settlement would be extremely difficult or costly, such collection would, inevitably, have some associated costs, uncertainly and delay.

18.    In light of all of the foregoing facts and circumstances, I do not believe that the bankruptcy estate would obtain a more favorable net result through continued litigation with the Debtors than will be achieved through Court approval and performance of the Settlement Agreement.  Consequently, I believe that the paramount interests of creditors weigh in favor of the Settlement.

19.    As described above, the Debtors are represented in the State Court Action by the Nett & Nett law firm.  Consequently, I an informed and believe that Nett & Nett is already very familiar with this litigation, and the facts, documents and issues involved in the litigation.  I am further informed and believe that Nett & Nett specializes in civil / business litigation of the type involved in the State Court Action and is well-qualified to represent me in this action.

20.    Pursuant to the terms of the Settlement Agreement, the bankruptcy estate shall obtain a 50% ownership interest in the State Court Action and all proceeds derived from this action.  Therefore, pursuant to the attached Motion, I seek the authority of the Court to employ and pay the Nett & Nett firm to represent me (jointly with its representation of the Debtors) as my special litigation counsel in the State Court Action.  Nett & Nett has agreed to jointly represent the Debtors and I as plaintiffs in the State Court Action through judgment for a flat fee of $25,000.00, which I propose to pay from the $74,000.00 Settlement Amount to be received by the estate from the Debtors pursuant to the terms of the Settlement.  I also seek the authority of the Court to employ Nett & Nett (to the extent needed) for the purpose of enforcing any judgment that the Debtors and I might obtain against the defendants in the State Court Action for a contingency fee of 20% of all gross amounts recovered through the efforts of this firm, with such amounts to be paid directly from the gross amounts thereby collected without further notice or

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

- 24 -

1    Order of the Court.

2        21.    Nett & Nett has not received, and will not receive, a prepetition or postpetition

3    retainer.  Instead, the firm will be compensated exclusively from the flat fee and contingency fee

4    described in the immediately preceding paragraph for all professional services rendered and costs

5    incurred in the representation.

6        22.    To the best of my knowledge and belief, Nett & Nett is not a prepetition creditor of

7    the Debtors nor a creditor of the bankruptcy estate, and neither the firm nor any of the attorneys

8    comprising or employed by it have any connection with the Debtors' creditors, or any other party

9    in interest, or their respective attorneys or accountants, the United States Trustee, or any person

10    employed in the Office of the United States Trustee.

11        23.    I believe that the continued prosecution of the action will ultimately result in a net

12    benefit to the bankruptcy estate and its creditors, and that continued prosecution of the State

13    Court Action is in the best interest of the bankruptcy estate and its creditors.  Nett & Nett is the

14    only legal counsel known to me that is willing to prosecute the State Court Action to judgment for

15    a flat fee of $25,000.00, and I believe that it is unlikely that the bankruptcy estate would have

16    sufficient funds to hire counsel on an hourly fee basis to prosecute this litigation.  I further believe

17    that it is unlikely that I would be able to hire counsel to prosecute the State Court Action on a

18    purely contingency fee basis.  Thus, I believe that absent obtaining Court approval of the

19    employment of, and payment of fees to, Nett & Nett as described herein, prosecution of the State

20    Court Action will likely not be possible.  Accordingly, it is my opinion that it is in the interest of

21    all interested parties for the Court to approve the proposed employment on the terms set forth

22    herein and in the attached Settlement Agreement.

23        I declare under penalty of perjury under the laws of the United States of America that the

24    foregoing is true and correct.  Executed this ___9th___ day of September, 2010, at Newport Beach,

25    California.

26

27    _____
                    Steven M. Speier

28

Ringstad & Sanders
LLP
2020 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

**DECLARATION OF AMY K. NETT**

I, Amy K. Nett, declare:

1.    I have personal knowledge of the facts set forth below, and if called upon as a witness, I could and would competently testify thereto. I am an attorney licensed to practice law before all of the courts of the State of California. I am a principal of the law firm Nett & Nett, P.C. ("Nett & Nett"), counsel of record for Francis Gabriel and Marilynn Gabriel (hereafter collectively "Debtors") in the litigation currently pending in Riverside County Superior Court commonly known as *Francis Gabriel, Marilyn Gabriel and Southern California FMG, Inc. v. Gilbert Finley, Kellie Finley, Michael Hotvedt and FMG Construction & Restoration, Inc.*, R.C.S.C. Case No. RIC510995 (hereafter the "State Court Action"). Recently, Nett & Nett also became counsel of record for the Debtors in their Chapter 7 bankruptcy case (*In re Gabriel*, U.S.B.C. Case No. 6:09-19577 MJ) for the purpose of negotiating the terms of a settlement between the Debtors and the Chapter 7 trustee of the Debtor's bankruptcy estate, Steven M. Speier (the "Trustee"), as is now embodied in a written Settlement Agreement and Conflict of Interest Waiver (the "Settlement Agreement") between said parties. A true and correct copy of the Settlement Agreement and Conflict of Interest Waiver is attached hereto as Exhibit "1." It is not anticipated that Nett & Nett will be required to render any additional services to the Debtors in their bankruptcy case.

2.    Debtors are the sole shareholders of an entity known as Southern California FMG, Inc., a California corporation (hereafter "SCFMG"), which is engaged in the restoration, renovation and repair of residential and commercial properties that have suffered water or fire damage. Francis Gabriel's stepson, Gilbert Finley, acted as the operations manager for SCFMG, and managed the day-to-day operations of the company. Gilbert Finley was a member of SCFMG's board of directors, but he was not an officer or shareholder of the company.

3.    The Debtors are currently embroiled in litigation with Gilbert Finley and others in the State Court Action regarding SCFMG and its assets. In the State Court Action, the Debtors' Complaint alleges causes of action for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraud & deceit; (5) constructive fraud; (6)

1   conversion; (7) conspiracy; and (8) declaratory relief. Attached hereto as Exhibit "2" is a true and

2   correct copy of the Debtors' Second Amended Complaint in the State Court Action.

3       4.      As part of the Settlement between the Debtors and Trustee, and as set forth in the

4   Settlement Agreement, Nett & Nett has agreed to represent the Trustee (jointly with its

5   representation of the Debtors) as his special litigation counsel in the State Court Action for a flat

6   fee of $25,000.00 to be paid from the $74,000.00 Settlement Amount to be paid by Debtors to the

7   Trustee under the Settlement Agreement. Nett & Nett has further agreed to undertake any post-

8   judgment collection efforts necessary to enforce any judgment that the Trustee and Debtors might

9   obtain in the State Court Action for a contingency fee of 20% of all gross amounts recovered.

10      5.      Included as part of the Settlement Agreement is a Written Conflict of Interest

11  Waiver by the Debtors and Trustee. By way of this Conflict of Interest Waiver, each of the

12  parties to the Agreement acknowledges that pursuant to the Agreement the Nett & Nett law firm:

13  (i) is currently counsel of record to the Debtors in their Chapter 7 Bankruptcy Case; (ii) shall

14  represent both the Trustee and the Debtors in the State Court Action; and (iii) shall represent the

15  Debtors in a currently pending Bankruptcy Code section 523 nondischargeability adversary

16  proceeding. In the Agreement, the Debtors and Trustee each acknowledge that Nett & Nett's

17  concurrent representation of the Trustee and the Debtors will result in actual and/or potential

18  conflicts of interests. However, the Agreement recites that notwithstanding such actual and/or

19  potential conflicts of interest, the Trustee and the Debtors desire Nett & Nett to concurrently

20  represent them as described above and, by the execution of the Agreement, the Trustee, Francis

21  Gabriel and Marilyn Gabriel each thereby waive in writing such actual and/or potential conflicts

22  of interest and expressly agree to such concurrent representation of the parties by Nett & Nett

23  notwithstanding such actual and/or potential conflicts of interest.

24      6.      Because the Debtors are currently represented in the State Court Action by Nett &

25  Nett, this law firm and its attorneys are already very familiar with the litigation, and the facts,

26  documents and issues involved in the litigation. Among other things, Nett & Nett specializes in

27  civil / business litigation of the type involved in the State Court Action and is well-qualified to

28  represent the Trustee in this action. Attached hereto as Exhibit "3" is a true and correct copy of

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

439802.2

1  Nett & Nett's firm resume, which includes biographical information about each of the firm's

2  professionals as well as a listing of the hourly rates generally charged by the firm.

3      7.    Nett & Nett has not received, and will not receive, a prepetition or postpetition

4  retainer. Instead, the firm will be compensated exclusively from the flat fee and contingency fee

5  described above for all professional services rendered and costs incurred in the representation.

6  Nett & Nett has not agreed to share with any person or entity any compensation which it may

7  receive in this representation, except among principals and associates of the firm.

8      8.    Nett & Nett is not a prepetition creditor of the Debtors nor a creditor of the

9  bankruptcy estate, and neither the firm nor any of the attorneys comprising or employed by it

10  have any connection with the Debtors' creditors, or any other party in interest, or their respective

11  attorneys or accountants, the United States Trustee, or any person employed in the Office of the

12  United States Trustee. Nett & Nett does, however, currently represent the Debtors in the State

13  Court Action and also recently became counsel of record for the Debtors in the bankruptcy case

14  for the purpose of negotiating the Settlement Agreement between the Debtors and Trustee.

15  However, it is not anticipated that Nett & Nett will be required to render any future services to the

16  Debtors in connection with the bankruptcy case. Other than the foregoing, Nett & Nett has no

17  interest adverse to either the Debtors, Trustee, any creditor, or to this estate and is "disinterested"

18  as that term is defined in 11 U.S.C. § 101(14), and does not have any interest, nor represent any

19  interest, adverse to the Debtors or the estate.

20      I declare under penalty of perjury under the laws of the United States of America that the

21  foregoing is true and correct. Executed this 20 day of August, 2010, at Temecula, California.

22

23                                Amy K. Nett

24

25

26

27

28

439802.2

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450